UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x
                                            :
OAKTREE CAPITAL MANAGEMENT, L.P.,           :
                                            : 15-cv-9143 (JGK)
           Plaintiff,                       :
                                            :
     -- against --                          : **ANSWER,**
                                            : **AFFIRMATIVE DEFENSES AND**
TECHNOLOGY PARTNERS, INC.,                  : **COUNTERCLAIMS**
                                            :
           Defendant.                       :
                                            :
------------------------------------------- x

Defendant Technology Partners, Inc. ("TPI"), by its attorneys Sullivan & Worcester LLP, as and for its Answer to the Complaint, its Affirmative Defenses and its Counterclaims states as follows:

## ANSWER

### NATURE OF THE ACTION

1.  To the extent that the allegations in paragraph 1 of the Complaint consist of legal conclusions or opinions, no response is required. TPI denies the remaining allegations in paragraph 1 of the Complaint.

### THE PARTIES

2.  TPI denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3.  TPI admits the allegations in paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4. TPI admits the allegations in paragraph 4 of the Complaint, except denies that it consented to the exclusive jurisdiction of the Supreme Court of the State of New York, County of New York.

5. TPI admits the allegations in paragraph 5 of the Complaint, except denies that it consented to the exclusive jurisdiction of the Supreme Court of the State of New York, County of New York.

## FACTUAL ALLEGATIONS

6. In response to the allegations in paragraph 6 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit A to the Complaint, for a true and complete statement of its terms.

7. In response to the allegations in paragraph 7 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit A to the Complaint, for a true and complete statement of its terms.

8. In response to the allegations in paragraph 8 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit A to the Complaint, for a true and complete statement of its terms.

9. In response to the allegations in paragraph 9 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit B to the Complaint, for a true and complete statement of its terms.

10. TPI denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11. TPI denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

12. TPI denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13. TPI denies the allegations in paragraph 13 of the Complaint.

14. TPI denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15. TPI denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, except admits that, on March 26, 2015, plaintiff informed TPI's investment banker that it would not proceed with the proposed financing.

16. TPI denies the allegations in the first sentence in paragraph 16 of the Complaint.

(a) In response to the allegations in paragraph 16(a) of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit C to the Complaint, for a true and complete statement of its terms; and

(b) In response to the allegations in paragraph 16(b) of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit D to the Complaint, for a true and complete statement of its terms.

17. TPI denies the allegations in paragraph 17 of the Complaint.

18. TPI denies the allegations in paragraph 18 of the Complaint, except admits that plaintiff requested reimbursement for certain expenses and the parties exchanged correspondence on the subject.

19. In response to the allegations in paragraph 19 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit E to the Complaint, for a true and complete statement of its terms.

20. In response to the allegations in paragraph 20 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit F to the Complaint, for a true and complete statement of its terms. In addition, TPI denies that Oaktree provided detailed billing information from Ernst & Young.

21. TPI admits the allegations in paragraph 21 of the Complaint.

22. TPI denies the allegations in paragraph 22 of the Complaint.

23. TPI denies the allegations in paragraph 23 of the Complaint.

24. TPI denies the allegations in paragraph 24 of the Complaint.

## CAUSE OF ACTION
### (Breach of Contract)

25. TPI incorporates by reference its responses to each and every allegation contained in paragraphs 1 through 24 above as if fully set forth herein.

26. To the extent that the allegations in paragraph 26 of the Complaint consist of legal conclusions or opinions, no response is required. In response to the allegations in paragraph 26 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit A to the Complaint, for a true and complete statement of its terms. TPI denies the remaining allegations in paragraph 26 of the Complaint.

27. TPI denies the allegations in paragraph 27 of the Complaint.

28. To the extent that the allegations in paragraph 28 of the Complaint consist of legal conclusions or opinions, no response is required. In response to the allegations in

paragraph 28 of the Complaint, TPI respectfully refers the Court to the referenced document, attached as Exhibit A to the Complaint, for a true and complete statement of its terms. TPI denies the remaining allegations in paragraph 28 of the Complaint.

29. In response to the allegations in paragraph 29 of the Complaint, TPI respectfully refers the Court to the referenced document, which is not attached to the Complaint, for a true and complete statement of its terms. TPI denies the remaining allegations in paragraph 29 of the Complaint.

30. TPI denies the allegations in paragraph 30 of the Complaint, except admits that it has not paid any money to Oaktree in connection with Oaktree's request for payment and reimbursement under the referenced document attached as Exhibit A to the Complaint,

31. TPI denies the allegations in paragraph 31 of the Complaint.

32. TPI denies the allegations in paragraph 32 of the Complaint.

## GENERAL DENIAL

Except as otherwise expressly admitted in paragraphs 1 through 32 above, TPI denies each and every allegation of paragraphs 1 through and including 32 of the Complaint, including, without limitation, the introduction, headings and subheadings contained in the Complaint, and TPI specifically denies any liability to plaintiff.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's cause of action is barred or limited, in whole or in part, by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's cause of action is barred or limited, in whole or in part, by its own prior or continuing breach of the parties' agreement.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred or limited, in whole or in part, by documentary evidence.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred or limited, in whole or in part, by its own contractual breaches.

### SIXTH AFFIRMATIVE DEFENSE

TPI at all times acted pursuant to its rights under the parties' Term Sheet or at law, and otherwise discharged each and every obligation that may have been owed to plaintiff.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered any cognizable injury.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff has not sustained any compensable damages for which TPI may be liable.

### NINTH AFFIRMATIVE DEFENSE

If plaintiff did sustain any compensable damages, plaintiff failed to mitigate its damages.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the parties' course of dealing and performance, industry practice and/or industry standards.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff does not have any contractual or other basis for recovering compensatory damages, interest, costs, attorney's fee or any other relief in this matter.

TPI reserves the right to assert additional defenses and/or supplement, alter and change its Answer and/or its Affirmative Defenses based upon information learned or developed during discovery or investigation in connection with this action.

## COUNTERCLAIMS

### Nature of the Action

1. Counterclaim-Plaintiff TPI brings these counterclaims against Counterclaim-Defendant Oaktree Capital Management, L.P. ("Oaktree") for breach of contract and breach of the covenant of good faith and fair dealing arising out of the parties' January 6, 2015 Non-binding Proposal and Exclusivity Letter (the "Term Sheet") in connection with (1) unnecessary and unreasonable due diligence expenses that Oaktree incurred and for which it has demanded reimbursement; (2) Oaktree's failure to provide notice of the Costs and Expenses (as defined in the Term Sheet) that it incurred exceeding the agreed-upon amounts of Costs and Expenses that required notice to TPI under the Term Sheet; and (3) Oaktree's arbitrary and irrational decision (made just three business days prior to the intended closing date of the acquisition) not to fund the acquisition by which TPI would acquire its competitor, Computer Processing Unlimited, Inc. ("CPU").

### The Parties, Jurisdiction and Venue

2. TPI is a corporation organized under the laws of the State of North Carolina with its principal place of business at 6000 Fairview Road, Suite 350, Charlotte, North Carolina.

3. Upon information and belief, Oaktree is a limited partnership organized under the laws of the State of Delaware with its principal place of business at 333 South Grand

Avenue, Los Angeles, California. Upon information and belief, none of Oaktree's partners is a citizen of North Carolina.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest, and pursuant to 28 U.S.C. § 1367(a) as TPI's counterclaims are so related to plaintiff's claim in this action that they form part of the same case or controversy.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(3) because Oaktree consented to the jurisdiction of this Court for purposes of enforcing the Term Sheet, which gives rise to the action, and because, upon information and belief, Oaktree transacts business in New York

## Facts Common to Counterclaims

6. In or about late 2014, TPI learned of the opportunity to acquire CPU.

7. TPI discussed the potential acquisition with its Board of Directors and key advisors and decided to move forward with the acquisition. However, TPI lacked sufficient funding to acquire CPU. Therefore, TPI contacted Oaktree to acquire the necessary funding for the corporate acquisition.

8. On or about January 6, 2015, Oaktree and TPI executed the Term Sheet, pursuant to which Oaktree proposed to provide financing to TPI for a corporate acquisition of CPU (the "Proposed Financing").

9. The Proposed Financing was contingent upon due diligence conducted by Oaktree.

10. Specifically, the Term Sheet set forth that TPI would reimburse Oaktree for the following due diligence expenses:

> all *reasonable documented* out-of-pocket fees and expenses incurred by or on behalf of Oaktree at any time in connection with a possible Loan and any due diligence conducted by Oaktree or its advisors in connection therewith, including, but not limited to, attorney and accountant fees and expenses, irrespective of whether the Loan is consummated (the "Costs and Expenses") on the earlier of (x) the closing of the Loan or (y) thirty (30) business days following demand therefor by Oaktree.

(emphasis added).

11. On or about January 15, 2015, the parties amended the Term Sheet to provide that Oaktree's financial due diligence would be completed before the start of the more costly legal due diligence. The parties also agreed that the legal due diligence would not start unless Oaktree was satisfied with the results from the financial due diligence.

12. On or about February 19, 2015, the parties amended the Term Sheet, capping the due diligence expenses to be paid by TPI at $400,000.

13. The Term Sheet also provided the following notifications and deadlines related to the Costs and Expenses to be incurred by Oaktree:

> Within ten (10) days of the Costs and Expenses in the aggregate exceeding a Notification Amount (as defined below) Oaktree shall provide [TPI] written notice of the Notification Amount exceeded. The initial Notification Amount shall be $100,000.00 and each additional $75,000.00 thereafter shall constitute a Notification Amount.

14. During the due diligence period, Oaktree engaged Ernst & Young, LLP ("E&Y") to complete the financial due diligence and Kirkland & Ellis LLP ("Kirkland") to complete the legal due diligence.

15. TPI performed all of its obligations under the Term Sheet, including, but not limited to, providing Oaktree with all requested documents during the due diligence period.

9

16. On or about March 26, 2015, Oaktree informed TPI's investment banker that it would not proceed with the financing of the corporate acquisition.

17. In an e-mail dated March 26, 2015, Nicholas Basso, an employee at Oaktree, stated that the reason for refusing to proceed with the Proposed Financing of the corporate acquisition was that "[Oaktree] ha[s] viewed a McKesson counterparty as a key fact to the deal."

18. However, as a result of the financial due diligence, Oaktree knew or should have known the business relationship between CPU and McKesson Corporation approximately six weeks before it notified TPI's investment banker that Oaktree was declining to consummate the financing for the CPU acquisition.

19. On or about February 13, 2015, TPI provided E&Y with the financial due diligence report created by TPI's financial advisors, Swenson Advisors. Part of that due diligence report included an "Intercompany Memo" that shows the relationship between CPU and McKesson. The Intercompany Memo states that "InteGreat is an intermediary entity which holds some of CPU's assets . . . InteGreat helps CPU run and operate the business . . . . InteGreat is wholly owned by McKesson . . . ."

20. Based on the Intercompany Memo, Oaktree knew or should have known on or about February 13, 2015 that McKesson was not the owner of CPU. Instead, McKesson was the owner of InteGreat, which was an intermediary entity that helped run CPU's business for a fee.

21. Therefore, because McKesson's ownership of CPU was a "key fact" for the financing, Oaktree breached its obligations under the Term Sheet when it proceeded with the

...
...

legal due diligence because Oaktree knew or should have known after the financial due diligence that McKesson was not the owner of CPU.

22. Knowing that it had violated the Term Sheet to complete the financial due diligence before the legal due diligence, and learning that potential litigation would be involved, Oaktree began to assert additional reasons for refusing to complete the proposed financing.

23. One of the additional reasons asserted was that Oaktree discovered "apparent accounting irregularities at CPU and concerns about the stability of its customer relationships." *See* Compl. ¶ 14. This, however, is something that Oaktree knew or should have known at the conclusion of the financial due diligence.

24. Another one of Oaktree's asserted reasons is that Oaktree learned more about TPI's "internal accounting procedures." *See* Compl. ¶ 14. This too is something that Oaktree knew or should have known at the conclusion of the financial due diligence.

25. On February 17, 2015, and despite Oaktree's knowledge of the above facts, Oaktree prematurely started the legal due diligence.

26. On or about March 30, 2015 (four days after it declined to proceed with the Proposed Financing), Oaktree requested that TPI pay Costs and Expenses totaling $272,259.13 directly to Kirkland, and pay directly to E&Y Costs and Expenses totaling $121,344, for a total of $393,603.13. The Kirkland and E&Y invoices provided to TPI on or about March 30, 2015 contained only the aggregate total amount billed, without any time entries or other detail of the fees and expenses.

27. Over the course of only thirty-eight (38) days, Kirkland incurred more than $272,000 in legal fees and expenses.

28.     Kirkland billed for the time of fourteen different legal professionals, four of whom were charging in excess of $1,000 per hour. The following is a complete breakdown of the hours of work allegedly completed by Kirkland and the hourly rates charged:

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Christopher Anderson | 26.50 | 795.00 | 21,067.50 |
| Kristin E Bacchus | 148.75 | 730.00 | 108,587.50 |
| Michael Gallo | 9.50 | 275.00 | 2,612.50 |
| Erik Hepler | .75 | 1,060.00 | 795.00 |
| Edward B Holzwanger | .25 | 895.00 | 223.75 |
| Amy J Jackson | 16.75 | 295.00 | 4,941.25 |
| Joe Kaczorowski | 26.50 | 570.00 | 15,105.00 |
| Nisha Kanchanapoomi | 91.50 | 930.00 | 85,095.00 |
| Gregg G Kirchhoefer, P.C. | .25 | 1,145.00 | 286.25 |
| Russell S Light | 11.75 | 1,165.00 | 13,688.75 |
| Timothy O'Brien | .50 | 270.00 | 135.00 |
| Tana M Ryan | 9.00 | 985.00 | 8,865.00 |
| Robin F Soneson | 5.50 | 295.00 | 1,622.50 |
| Seth Traxler | 3.00 | 1,030.00 | 3,090.00 |
| **TOTALS** | **350.50** | | **$266,115.00** |

29.     The Costs and Expenses for the legal due diligence (that should not have been performed in the first place) are unreasonable.

30.     To this date, Oaktree has refused to provide TPI with a detailed invoice for the financial due diligence completed by E&Y. Therefore, it is impossible for TPI to know whether the financial due diligence expenses are reasonable.

31.     Oaktree failed to provide TPI with written notice within ten days of the Costs and Expenses exceeding the $100,000 initial Notification Amount.

32.     Oaktree failed to provide TPI with written notice within ten days of the Costs and Expenses exceeding the $175,000 Notification Amount.

33.     Oaktree failed to provide TPI with written notice within ten days of the Costs and Expenses exceeding the $250,000 Notification Amount.

34. Oaktree failed to provide TPI with written notice within ten days of the Costs and Expenses exceeding the $325,000 Notification Amount.

35. Oaktree knew that TPI intended to close its corporate acquisition of CPU no later than March 31, 2015.

36. On or about March 26, 2015, after 7:00 p.m., just three days prior to the intended closing of the CPU acquisition, Oaktree informed TPI's investment banker that it would not proceed with the financing of the corporate acquisition.

37. Prior to March 26, 2015, Oaktree gave no indication to TPI that Oaktree did not intend to proceed with the financing.

38. TPI had relied on Oaktree's commitment to fund the corporate acquisition and made representations based on that commitment.

39. Oaktree's decision was arbitrary and irrational. The asserted rationale Oaktree gave for declining to fund the corporate acquisition was based on information that Oaktree knew or should have known at the conclusion of the financial due diligence.

40. As a result of Oaktree's untimely arbitrary and irrational decision, TPI was forced to unwind the asset purchase agreement with CPU, use a commercial lender to fund the transaction and enter into a down-payment/earn-out transaction rather than a full acquisition of CPU's assets.

41. The commercial lender put additional restrictions on TPI, which were not a part of the Term Sheet executed between TPI and Oaktree to fund the corporate acquisition.

42. Moreover, CPU took Oaktree's untimely arbitrary and irrational decision as an opportunity to renegotiate the corporate acquisition. As a result, TPI received zero representations and warranties from CPU in the acquisition.

13

## First Counterclaim
**(Breach of Contract)**

43. TPI incorporates by reference the allegations contained in paragraphs 1 through 42 above as if fully set forth herein.

44. The Term Sheet constitutes a valid contract between TPI and Oaktree.

45. TPI performed all of its obligations under the Term Sheet, including, but not limited to, providing all documents and information requested by Oaktree during the due diligence period.

46. Oaktree incurred costs and expenses for accounting, legal and other services which were not "customary financial and legal due diligence" services under the Term Sheet, in violation of Oaktree's contractual obligations under the Term Sheet.

47. Oaktree incurred costs and expenses that were not reasonable, in violation of Oaktree's contractual obligations under the Term Sheet.

48. Oaktree failed to provide TPI with written notice of Costs and Expenses exceeding a Notification Amount on at least four separate dates, in violation of Oaktree's contractual obligations under the Term Sheet.

49. As a result of Oaktree's breaches of its contractual duties, TPI has incurred damages, including, but not limited to, the following:

    a. Costs incurred to consummate the acquisition with financing provided by parties other than Oaktree; and

    b. Costs incurred due to Oaktree's failure to notify TPI of its decision not to consummate the loan to TPI for the acquisition of CPU until after

7:00 p.m. on March 26, 2015, just three business days prior to the intended closing.

## Second Counterclaim
### (Breach of Good Faith and Fair Dealing)

50. TPI incorporates by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

51. The Term Sheet constitutes a valid contract between TPI and Oaktree.

52. A covenant of good faith and fair dealing in the course of contract performance is implied in the Term Sheet.

53. The Term Sheet contemplated the exercise of discretion by Oaktree.

54. Oaktree acted arbitrarily and/or irrationally in exercising its discretion when it notified TPI of its decision not to consummate the loan to TPI for the acquisition of CPU just three business days prior to the intended closing

55. Oaktree's actions were designed to deprive, and did deprive, TPI of the right to receive the benefits under the Term Sheet.

56. TPI incurred damages resulting from Oaktree's breach of its good faith and fair dealing, including, but not limited to, the following:

    a. Costs incurred to consummate the acquisition with financing provided by parties other than Oaktree; and

    b. Costs incurred due to Oaktree's failure to notify TPI of its decision not to consummate the loan to TPI for the acquisition of CPU until after 7:00 p.m. on March 26, 2015, just three business days prior to the intended closing.

**WHEREFORE**, Technology Partners, Inc. respectfully prays that this Court enter judgment in its favor and against plaintiff as follows:

    a.    Dismissing the Complaint, with prejudice, in its entirety;

    b.    Awarding TPI its costs and disbursements in this action, including reasonable attorney's fees;

    c.    On its First Counterclaim, awarding TPI damages against Oaktree in an amount to be determined at trial, plus interest to the maximum extent permitted by law, along with its costs and disbursements in this action, including reasonable attorney's fees;

    d.    On its Second Counterclaim, awarding TPI damages against Oaktree in an amount to be determined at trial, plus interest to the maximum extent permitted by law, along with its costs and disbursements in this action, including reasonable attorney's fees; and

    e.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
          December 18, 2015

**SULLIVAN & WORCESTER LLP**

By: /s/Harry H. Rimm
     Harry H. Rimm

1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
Email: hrimm@sandw.com

*Attorneys for Defendant and Counterclaim-Plaintiff Technology Partners, Inc.*

17