UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                     :

OAKTREE CAPITAL MANAGEMENT, L.P.,      :

                                           :

                     Plaintiff,             :    15-CV-9143 (JGK) (SN)

                                           :

           -against-                    :

                                           :

TECHNOLOGY PARTNERS, INC.,            :

                                           :

                     Defendant.        :
------------------------------------------------------------- x


**OAKTREE CAPITAL MANAGEMENT, L.P.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
<u>TECHNOLOGY PARTNERS, INC.'S COUNTERCLAIMS</u>**


TAYLOR & COHEN LLP
Robert Cohen
Zachary S. Taylor
40 Worth Street
10th Floor
New York, New York 10013
Telephone:    (646) 527-7377
Facsimile:      (646) 439-9983


New York, New York
January 11, 2016

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ALLEGATIONS ..................................................................................... 3

ARGUMENT ....................................................................................................................... 7

I.       The First Counterclaim for Breach of Contract Should Be Dismissed............................. 8

II.      The Second Counterclaim Fails To State A Valid Claim. .................................................. 11

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................................. 7

*Cocensionaria DHM v. Int'l Fin. Corp.,*
 307 F. Supp. 2d 553 (S.D.N.Y. 2004) ............................................................... 12

*Giller v. Oracle USA, Inc.,*
 No. 11 Civ. 02546, 2012 WL 467327 (S.D.N.Y. Feb. 14, 2012) ....................... 11

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.,*
 No. 13 Civ. 519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014)....................... 8, 11

*In re Downtown Athletic Club of New York City, Inc.,*
 No. 98 B 41419, 1998 WL 898226 (Bankr. S.D.N.Y. Dec. 21, 1998) .................. 12

*In re Elan Corp. Sec. Litig.,*
 543 F. Supp. 2d 187 (S.D.N.Y. 2008) .................................................................. 7

*In re Lehman Brothers Holdings Inc.,*
 541 B.R. 551 (S.D.N.Y. 2013 .............................................................................. 14

*In re Minpeco, USA, Inc.,*
 237 B.R. 12 (S.D.N.Y. 1997) ............................................................................... 14

*Kenford Co. v. County of Erie,*
 73 N.Y.2d 312 (1989) ........................................................................................ 8, 11

*Kingvision Pay-Per-View, Ltd. v. Falu,*
 No. 06 Civ. 4457, 2008 WL 318352 (S.D.N.Y. Feb. 4, 2008) .............................. 7

*Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.,*
 651 N.Y.S.2d 490 (App. Div. 1996)) ................................................................... 8

*M/A COM Sec. Corp. v. Galesi,*
 904 F.2d 134 (2d Cir. 1990) ............................................................................... 13

*Mfrs. Hanover Trust Co. v. Yanakas,*
 7 F.3d 310 (2d Cir. 1993) ................................................................................... 14

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293 (1983) ............................................................................................ 12

*Nat'l Westminster Bank, U.S.A. v. Ross*,
    130 B.R. 656 (S.D.N.Y. 1991) ................................................................................ 12

*Pan Am Corp. v. Delta Air Lines, Inc.*,
    175 B.R. 438 (S.D.N.Y. 1994) ................................................................................ 13

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y.2000) ......................................................................... 7

*Suthers v. Amgen Inc.*,
    441 F. Supp. 2d 478 (S.D.N.Y. 2006) ................................................................ 12, 13

*Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*,
    30 N.Y.2d 34 (1972) ............................................................................................... 13

*Vysyaraju v. Mgmt. Health Sols., Inc.*,
    No. 12 Civ. 4420 JGK, 2013 WL 4437236 (S.D.N.Y. Aug. 19, 2013) ........................ 7, 12, 13

*Ward v. Theladders.com, Inc.*,
    3 F. Supp. 3d 151 (S.D.N.Y. 2014) .......................................................................... 11

*Warner Theater Assocs. v. Metro. Life Ins. Co.*,
    No. 97 Civ. 4914, 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) ............................... 11, 14

*Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992) ............................................ 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................... passim

## INTRODUCTION

Technology Partners, Inc. ("TPI") will not pay its bills. Instead of reimbursing Oaktree Capital Management, L.P. ("Oaktree"), as it is required to do under a contract between the entities, TPI has asserted baseless counterclaims as part of its ongoing strategy to evade its obligations.

In March 2015, Oaktree, a firm specializing in private investments, decided not to provide a $20 million loan to finance TPI's acquisition of a competitor. TPI was so disappointed by Oaktree's business decision that it reneged on its contractual obligation to reimburse Oaktree for any of the nearly $400,000 in due diligence expenses Oaktree incurred during the course of its review of the proposed deal. In the face of TPI's continued intransigence, Oaktree was compelled to file this lawsuit against TPI to recoup the money it is owed.

TPI's obligation to pay Oaktree is clearly stated in the Non-Binding Proposal and Exclusivity Letter ("Term Sheet"), which governed the proposed financing. In plain language, the Term Sheet provides that TPI shall "reimburse Oaktree for all reasonable out-of-pocket fees and expenses" that Oaktree incurred in connection with the proposed loan, "irrespective of whether the Loan is consummated."

Faced with an obvious material breach of an unambiguous contract provision, TPI has now filed two meritless counterclaims against Oaktree. In its First Counterclaim, TPI maintains that Oaktree breached the Term Sheet by (i) incurring due diligence expenses that were neither customary nor reasonable and (ii) failing to provide Oaktree with written notice of its due diligence expenses when those expenses reached certain prescribed numerical values. The Second Counterclaim, for breach of the implied covenant of good faith and fair dealing, is premised on the bald conclusion (contradicted by TPI's own allegations) that Oaktree acted

arbitrarily and irrationally in exercising its discretion not to provide the proposed $20 million in funding less than a week before TPI intended to complete the acquisition. From these alleged "breaches" TPI somehow asserts that it is entitled to damages for the costs it supposedly incurred when it obtained financing for the deal through an alternative lender.

As explained more fully below, both of TPI's counterclaims fail in the face of the plain language of the Term Sheet, which governs the proposed transaction. First, with respect to the breach of contract claim, TPI does not (and indeed cannot) allege damages that are the natural and probable consequence of the alleged breaches. Second, TPI's claim for breach of the implied covenant seeks to impose on Oaktree an obligation that is inconsistent with the express terms of the Term Sheet.

TPI and Oaktree both agreed that the Term Sheet, with only limited exceptions, was merely a "non-binding" proposal that should "not be relied upon[] as a binding, enforceable contract." (Notably, one of the exceptions is the requirement that TPI reimburse Oaktree for its due diligence expenses. TPI agreed that this obligation was, in fact, a binding contract.) Importantly, TPI and Oaktree further agreed that Oaktree may "withdraw[]" its proposal to provide the funding "at any time for any reason or no reason without notice."

TPI does not contest the validity or meaning of the plain language of the Term Sheet. Thus, its counterclaims are legally unsupportable. The alleged damages in both counts (which sound solely in ***contract***) are based on the fact that Oaktree decided not to fund the proposed deal and informed TPI of this decision less than a week before the date TPI asserts it intended to close the deal. However, these claims must be dismissed for the simple reason that there was no ***contract*** that included any obligation for Oaktree to provide the funding or to inform TPI of its

2

decision regarding the proposed deal within any time frame, much less a time frame mandated by TPI. The Term Sheet makes this perfectly clear.

Even if, as TPI alleges, the Term Sheet's provisions somehow constituted a contract between the parties with respect to the funding of the proposed deal (contrary to the plain language disclaiming such an agreement), the counterclaims would still fail in the face of the language cited above. In other words, the terms of this imagined "contract" unambiguously state that Oaktree is under no obligation to provide the proposed funding or to provide any notice to TPI of such a decision. Consequently, TPI's meritless counterclaims should be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### SUMMARY OF ALLEGATIONS

In late 2014, TPI was considering the opportunity to purchase Computer Processing Unlimited, Inc. ("CPU"), one of its competitors. Lacking sufficient funds to make the acquisition, TPI contacted Oaktree to obtain financing. (Countercl. ¶¶ 1, 6, 7). On or about January 6, 2015, Oaktree and TPI executed the Term Sheet. (*Id*. ¶ 8). The Term Sheet sets forth a proposal for Oaktree to provide a $20 million loan to TPI. (Term Sheet at 1).[1]

This proposed financing was not a contract between Oaktree and TPI. The Term Sheet expressly provides that the proposal was "non-binding." (*Id*.). Additionally, it states that "[n]either the Proposal nor any course of conduct between [the parties] … constitutes or is intended to constitute, and should not be relied upon as, a binding and enforceable contract, except with respect to … our agreement with respect to the Costs and Expenses (as defined

---

[1] The Term Sheet is attached to Oaktree's Complaint as Exhibit A.

below) and exclusivity." (*Id.* at 2).[2] Furthermore, the Term Sheet provides that Oaktree's

proposal could "be withdrawn or altered ***at any time for any or no reason without notice***." (*Id.*)

(emphasis added). Consummation of the loan was "subject to the completion of customary

financial and legal due diligence ***satisfactory to Oaktree in its sole discretion*** [and] the

negotiation and execution of definitive loan and ancillary agreements on terms and conditions

***satisfactory to Oaktree in its sole discretion***." (*Id.*) (emphasis added).

TPI and Oaktree did agree that certain provisions of the Term Sheet, other than the

proposed financing, constitute a binding and enforceable contract. (*Id.*). Specifically, the parties

agreed that TPI was obligated to reimburse the costs and expenses incurred by Oaktree in

connection with its due diligence. (*Id.* at 3). This obligation was binding on TPI "irrespective of

whether the Loan is consummated." (*Id.*). Under the contract, the costs comprise Oaktree's due

diligence expenses:

> all reasonable documented out-of-pocket fees and expenses
> incurred by or on behalf of Oaktree at any time in connection with
> a possible Loan and any due diligence conducted by Oaktree or its
> advisors in connection therewith, including, but not limited to,
> attorney and accountant fees and expenses.

(*Id.*). For its part, Oaktree agreed to provide written notice to TPI within ten days of its costs and

expenses exceeding $100,000, and each additional $75,000 thereafter. (*Id.*). In an email dated

---

[2] With respect to exclusivity, TPI "agree[d] to work exclusively with Oaktree to consummate the

Loan." (Term Sheet at 3). The Term Sheet provides that the exclusivity period was to end on

February 20, 2015. (*Id.*). By email dated February 19, 2015, TPI agreed to extend this date to

March 2, 2015. (Compl. ¶ 9, Ex. B; Ans. ¶ 9).

February 19, 2014, TPI agreed to a $400,000 cap with respect to due diligence costs and expenses. (Countercl. ¶ 12; Compl. ¶ 9, Ex. B).

From January through March 2015, Oaktree conducted due diligence relating to the proposed loan. Oaktree engaged Ernst & Young, LLP ("E&Y") to conduct the financial due diligence and Kirkland & Ellis LLP ("K&E") to conduct the legal due diligence. (Countercl. ¶ 14). Oaktree incurred $393,603.14 in due diligence expenses: $121,344 in connection with E&Y's financial due diligence and $272,259.13 in connection with K&E's legal due diligence. (Countercl. ¶¶ 26, 27, 28; Compl. ¶ 16, Exs. C and D; Ans. ¶ 16).

On March 26, 2015, Oaktree informed TPI that it would not proceed with the proposed financing. (Countercl. ¶ 16). To date, TPI has paid nothing in connection with any of the due diligence expenses that Oaktree incurred. (Compl. ¶ 21; Ans. ¶ 21).

Notwithstanding the plain language of the Term Sheet, TPI alleges that it "relied on Oaktree's commitment to fund the corporate acquisition." (Countercl. ¶ 38). TPI alleges that Oaktree's decision not to fund its acquisition of CPU was "arbitrary and irrational." (*Id*. ¶ 39). However, the Counterclaims acknowledge that Oaktree provided multiple reasons for its decision (which it was not obligated to do under the Term Sheet), including: (1) the nature of the relationship between CPU and McKesson Corporation; (2) the possibility of accounting irregularities at CPU and concerns about the stability of its customer relationships; and (3) TPI's own internal accounting procedures. (*Id.* ¶¶ 17-24). TPI further alleges that since those facts

came to light, or should have come to light, during E&Y's financial due diligence, K&E "prematurely started the legal due diligence." (*Id.* ¶ 25).[3]

     The Counterclaims allege that the costs and expenses incurred by Oaktree in connection with its due diligence were not reasonable. (*Id.* ¶ 29). The Counterclaims also allege that Oaktree failed to provide written notice to TPI within ten days of Oaktree's costs and expenses exceeding $100,000 and each $75,000 thereafter (none of which TPI has paid). (*Id.* ¶¶ 31-34). Finally, the Counterclaims allege that Oaktree knew that TPI intended to close its acquisition of CPU no later than March 31, 2015. (*Id.* ¶ 35). According to the Counterclaims, because Oaktree informed TPI of its decision on March 26, 2015, TPI had to seek alternative financing on short notice under less favorable terms than those proposed in the Term Sheet. (*Id.* ¶ 36).

---

[3] According to the Counterclaim, the parties amended the Term Sheet to provide that the financial due diligence would be completed before the start of the legal due diligence. (Countercl. ¶ 11). The Term Sheet expressly provides, however, that all amendments to the parties' agreement as to due diligence costs and expenses must be made in writing and signed by the parties:

> This letter sets forth the entire agreement between the parties with respect to the Costs and Expenses . . . supersedes all prior communications, written or oral, with respect hereto and thereto, and may not be amended, supplemented, or modified except in a writing signed by the parties hereto or thereto, as applicable.

(Term Sheet at 3). TPI does not allege that this supposed amendment was in writing and signed by the parties, nor does it attach to its Counterclaims any document purporting to amend or supplement the Term Sheet.

**ARGUMENT**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the Complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Vysyaraju v. Mgmt. Health Sols., Inc.,* No. 12 Civ. 4420 JGK, 2013 WL 4437236, at *1 (S.D.N.Y. Aug. 19, 2013) (Koeltl, J.). In deciding the motion, "the Court may consider documents that are referenced" in the pleadings, "documents that the [counterclaimant] relied on in bringing suit and that are either in the [counterclaimant's] possession or that the [counterclaimant] knew of when bringing suit, or matters of which judicial notice may be taken." *Id*. at *2. "The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008) (quotation marks omitted). *See also Rapoport v. Asia Elecs. Holding Co.,* 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("If these documents contradict the allegations of the amended complaint, the documents control.").

"While the Court should construe the factual allegations in the light most favorable to the plaintiffs, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Vysyaraju,* WL 4437236, at *1 (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A counterclaim containing "conclusory statements" and facts not "sufficient to raise the counter-plaintiff's right to relief above the speculative level" cannot survive a motion to dismiss. *Kingvision Pay-Per-View, Ltd. v. Falu*, No. 06 Civ. 4457, 2008 WL 318352, at *1 (S.D.N.Y. Feb. 4, 2008) (Koeltl, J.).

Here, in the face of the plain, unambiguous and uncontested language of the Term Sheet, TPI's Counterclaims cannot meet the requirements to withstand a motion to dismiss. Consequently, the Counterclaims should be dismissed with prejudice.

7

## I.       The First Counterclaim for Breach of Contract Should Be Dismissed.

To state a claim for breach of contract under New York law, "a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) ***damages resulting from the breach***." *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13 Civ. 519, 2014 WL 1383703, at *10 (S.D.N.Y. Mar. 31, 2014) (emphasis added and quotation marks omitted). The damages alleged must be the "natural and probable consequence of the breach." *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (1989). Notably, "[w]here a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order." *House of Europe Funding,* 2014 WL 1383703, at 10 (quoting *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.,* 651 N.Y.S.2d 490, 492 (App. Div. 1996)).

Here, TPI's breach of contract claim necessarily fails because it cannot meet the pleading requirements for damages. The reasons for this are clear:

   (1) Oaktree had no contractual obligation to provide the proposed funding;

   (2) TPI (presumably recognizing this limitation) only alleges breaches of the Term Sheet's contractual provisions relating to Oaktree's due diligence expenses;

   (3) However, TPI does not (because it cannot) allege any damages flowing from these alleged breaches;

   (4) Accordingly, in an attempt to save its claim, TPI is left to plead damages premised on a non-existent agreement to provide funding.

As explained in more detail below, because of the obvious disconnect between the alleged breaches and damages, TPI's first counterclaim fails as a matter of law.

The alleged breach of contract is premised on two sets of allegations. First, according to the Counterclaims, the expenses Oaktree incurred were for services that were neither "customary financial and legal due diligence" nor "reasonable." (Countercl. ¶¶ 29, 46, 47). Second, TPI alleges that Oaktree failed to provide it with the written notices required under the Term Sheet when Oaktree's expenditures reached certain thresholds. (Countercl. ¶¶ 31-34, 48).

The alleged "breaches" only relate to the amount of money that Oaktree spent on due diligence. The demand for damages, however, is based on the costs TPI allegedly incurred (i) "to consummate the acquisition [of CPU] with financing provided by parties other than Oaktree," and (ii) "due to Oaktree's failure to notify TPI of its decision not to consummate the loan to TPI for the acquisition of CPU until … just three business days prior to the intended closing. (Countercl. ¶ 49).[4]

However, the Term Sheet is perfectly clear that the damages sought by TPI are impermissible because they do not flow from the alleged breaches and fall outside the agreement between the parties. Indeed, TPI and Oaktree both agreed that (i) the Term Sheet did not constitute an enforceable contract with respect to the provision of financing to acquire CPU and

---

[4] The reason for the disconnect between the alleged breaches and the claim for damages is clear: Certainly TPI would not be legally entitled to any damages from Oaktree even if it somehow could prove its allegations that Oaktree's expenses were not reasonable or customary or that Oaktree failed to provide written notices of its expenditures. This is for the simple reason that TPI has not paid Oaktree a single penny for the due diligence expenses. Consequently, the alleged breaches are nothing more than defenses to Oaktree's claim that TPI owes it money under the contract.

9

(ii) in any event, Oaktree was under no obligation to provide any funding or to inform TPI of its decision by a specific date or time.

With respect to the parties' agreement that Oaktree was under no obligation to provide financing for the acquisition, it is difficult to imagine language more straightforward and clear than what is found in the Term Sheet:

> The Proposal is non-binding. Neither the Proposal nor any course of dealing between us, [TPI] or any of our respective representatives constitutes or is intended to constitute, and should not be relied upon as, a binding and enforceable contract, except with respect to the proprietary and confidential nature of [Oaktree's] Proposal, our agreement with respect to Costs and Expenses (as defined below) and exclusivity, and as otherwise expressly stated herein.

(Term Sheet at 2). Accordingly, TPI agreed that the only areas covered by a contractual relationship with Oaktree concerned confidentiality, exclusivity of dealings, and Oaktree's due diligence costs and expenses. The parties expressly agreed that any other aspect to the Term Sheet, including the proposed funding of the credit facility, was ***not*** a contractual obligation. TPI has not, because it cannot, point to any language in the Term Sheet that imposes on Oaktree an obligation to provide funding.

Of course, even if the Term Sheet as a whole were (despite the plain language to the contrary) deemed a contract, TPI's claim would fare no better. In this alternative universe, TPI would be stuck with (again, plain and unambiguous) language disclaiming any obligation by Oaktree to provide funding to TPI or to inform TPI by a specific date of its decision:

> Any transaction would be subject to the completion of customary financial and legal due diligence satisfactory to Oaktree in ***its sole discretion*** ….
>
> [TPI] agrees to reimburse Oaktree for all reasonable documented out-of-pocket fees and expenses incurred by or on behalf of

> Oaktree or its advisors … *irrespective of whether the Loan is consummated* ….
>
> The Proposal may be *withdrawn* or altered *at any time* for any reason or *no reason without notice* ….

(*Id.* at 2-3 (emphases added)).

Plainly, then, the damages TPI claims are not the "natural and probable consequence" of the alleged breaches by Oaktree. *Kenford*, 73 N.Y.2d at 319. Rather, in the face of the plain language of the Term Sheet, TPI can only rely on a "wholly speculative theories of damages." *House of Europe Funding,* 2014 WL 1383703, at 10. Consequently, TPI's First Counterclaim for breach of contract is legally deficient and should be dismissed with prejudice.

## II. The Second Counterclaim Fails To State A Valid Claim.

TPI's remaining counterclaim is for breach of the implied covenant of good faith and fair dealing. Here, too, TPI alleges damages based on the same set of allegations: Oaktree's decision not to provide funding and the timing of when Oaktree informed TPI of this decision. (Countercl., ¶ 56). Here, too, TPI's claim fails as a matter of law.

Under New York law, the implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive *the fruits of the contract*." *Giller v. Oracle USA, Inc.*, No. 11 Civ. 02546, 2012 WL 467323, at *7 (S.D.N.Y. Feb. 14, 2012) (Koeltl, J.) (emphasis added and quotation marks omitted). Thus, to state a claim for breach of the implied covenant, "the plaintiff must allege facts which tend to show that the defendant sought to prevent *performance of the contract* or to withhold its benefits from the plaintiff." *Ward v. Theladders.com, Inc.*, 3 F. Supp. 3d 151, 164 (S.D.N.Y. 2014) (Koeltl, J.) (emphasis added and quotation marks omitted). *See also Warner Theater Assocs. v. Metro. Life Ins. Co.*, No. 97 Civ. 4914, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, J.) ("The duty of good faith arises only to control how

11

the parties carry out the rights and duties they have ***undertaken under the contract***; it does not give rise to independent obligations by itself.") (emphasis added) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)).

Two ironclad rules derive from the underlying purpose of the implied covenant of good faith. First, the implied covenant "cannot be used to create terms that do not exist in the writing." *Ward*, 3 F. Supp. 3d at 164 (quotation marks omitted). *See also Concesionaria DHM v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (Koeltl, J.) ("[T]he covenant of good faith cannot add terms to the contract that do not exist.") (quotation marks omitted); *Vysyaraju*, 2013 WL 4437236, at *11 (The implied covenant does not "include an obligation that would be inconsistent with the express terms of the contract.").

Second, under New York law, the implied covenant cannot be used to "impose liability on a party that engaged in conduct permitted by a contract." *Suthers v. Amgen Inc*., 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006). This is true even when "such conduct is allegedly unreasonable." *Id.* In other words, the "parties' contractual rights and liabilities may not be varied, nor their terms eviscerated, by a claim that one party has exercised a contractual right but has failed to do so in good faith." *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991) *aff'd sub nom. Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992). *See also Suthers,* 441 F. Supp. 2d at 485 ("Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable."); *In re Downtown Athletic Club of New York City, Inc.,* No. 98 B 41419, 1998 WL 898226, at *10 (Bankr. S.D.N.Y. Dec. 21, 1998) (Under New York law, a "party can exercise its rights under a contract for any reason it finds satisfactory, and such act will not constitute a breach of the implied covenant of good faith and fair dealing."). Thus, "the implied

12

covenant does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's anticipated fruits from the contract." *M/A COM Sec. Corp. v.* Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (quoting *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.,* 30 N.Y.2d 34, 46 (1972)). *See also Suthers,* 441 F. Supp. 2d at 485 ("Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract.").

Applying these principles to TPI's counterclaim for breach of the implied covenant leads to the inexorable conclusion that it fails as a matter of law. The Term Sheet did not require Oaktree to fund TPI's acquisition of CPU nor to inform TPI of its decision at a time convenient for TPI. Thus, TPI's counterclaim impermissibly seeks to impose obligations on Oaktree that fall well outside the provisions of the Term Sheet.

Moreover, even if the Term Sheet in its entirety were read to constitute a contract between TPI and Oaktree (and it does not), TPI's counterclaim would still fail. In this scenario, the "contract's" explicit terms, as discussed above, expressly disclaim any obligation by Oaktree to provide the funding and specifically give Oaktree the right to terminate the proposal "at any time for any reason or no reason without notice." (Term Sheet at 2). Thus, even assuming the Term Sheet as a whole were an enforceable contract, TPI's counterclaim would still allege "an obligation that would be inconsistent with the express terms of the contract," *Vysyaraju*, 2013 WL 447236, at *11, and would impermissibly seek to "impose liability on [Oaktree for] . . . conduct permitted by a contract." *Suthers,* 441 F. Supp. at 485. *See also Pan Am Corp. v. Delta Air Lines, Inc.,* 175 B.R. 438, 509 (S.D.N.Y. 1994) ("Delta also did not breach the implied duty of good faith and fair dealing by declining to provide Pan Am with additional financing" where

13

"[u]nder the terms of the Loan Agreement Delta was not obligated to provide such . . . financing."); *Warner Theater Assocs.*, 1997 WL 685334, at *6 (rejecting claim for breach of the implied covenant where the contract provided that defendant was not under any obligation to make the proposed loan to plaintiff); *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) (rejecting obligation under the implied covenant to provide funding where the lender "had never represented that credit of a certain amount would be provided"); *In re Minpeco, USA, Inc.*, 237 B.R. 12, 27-28 (S.D.N.Y. 1997) (rejecting claim for breach of the implied covenant for failure to provide advance notice of termination of financing where "the lender had made no contractual commitment to provide specific or ongoing financing").

TPI's attempt to conjure up a breach of the implied covenant claim is thus nothing more than sour grapes. Here, the court's commentary in *In re Lehman Brothers Holdings Inc.*, yet another case where a claim for breach of the implied covenant against a lender was rejected, is particularly applicable:

> That Plaintiffs are now dissatisfied with the bargain they struck and believe that JPMC behaved badly in enforcing its terms is of no moment. The parties were sophisticated players, represented by counsel, and practiced in executing and administering contracts of this type. The Court will not now rewrite the parties' contractual text—with express or implied terms—to provide Lehman with language more beneficial than what it negotiated.

541 B.R. 551, 570 (S.D.N.Y. 2013).

## CONCLUSION

For the foregoing reasons, Oaktree's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted and TPI's Counterclaims should be dismissed with prejudice.

Date:   January 11, 2016                    Respectfully submitted,
        New York, New York


                                                  /s Robert Cohen
                                             TAYLOR & COHEN LLP
                                             Robert Cohen
                                             Zachary S. Taylor
                                             40 Worth Street, 10th floor
                                             New York, NY 10013
                                             Tel. (646) 527-7377
                                             rcohen@taylorcohenllp.com

                                             *Attorneys for Plaintiff Oaktree Capital Management, L.P.*