UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
OAKTREE CAPITAL MANAGEMENT, L.P.,                                 :
                                                                  :
                      Plaintiff,                                          :   15 Civ. 9143 (JGK) (SN)
                                                                  :
      - against -                                                :
                                                                  :
TECHNOLOGY PARTNERS, INC.,                                        :
                                                                  :
                      Defendant.                                           :
------------------------------------------------------------------x

**TECHNOLOGY PARTNERS, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendant and Counterclaim-Plaintiff Technology Partners, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF THE CASE..................................................................................................2

ARGUMENT ..............................................................................................................................6

I.      THE APPLICABLE STANDARDS................................................................................6

II.     THE COUNTERCLAIM FOR BREACH OF CONTRACT PROPERLY ALLEGES DAMAGES.........................................................................................................7

III.    THE COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS PROPERLY ALLEGED...........................................10

        A. Distinct From Breach of Contract Claim ....................................................10

        B. Oaktree's Duty to Act in Good Faith ..........................................................11

IV.    TPI SHOULD BE GRANTED LEAVE TO REPLEAD......................................................13

CONCLUSION.........................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Bayerische Landesbank v. Aladdin Capital Mgmt. L.L.C.*,
    692 F.3d 42 (2d Cir. 2012) ........................................................................................... 8

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
    10 N.Y.3d 187 (2008) .................................................................................................. 8

*Components Direct, Inc. v. Eur. Am. Bank & Tr. Co.*,
    175 A.D.2d 227 (2d Dep't 1991) ............................................................................... 12

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004) ....................................................................... 11

*Cortec Indus. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ......................................................................................... 14

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995) ........................................................................................... 11, 12

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................. 13-14

*Giller v. Oracle USA, Inc.*,
    No. 11 Civ. 2546, 2012 WL 467323 (S.D.N.Y. Feb. 14, 2012) ............................... 11

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009) ....................................................................................... 14

*Hosp. Auth. v. GS Capital Ptnrs V Fund, L.P.*,
    No. 09 Civ. 8716 (PAC), 2011 U.S. Dist. LEXIS 5184 (S.D.N.Y. Jan. 20, 2011) ........ 10, 11

*House of Eur. Funding I, Ltd. v. Wells Fargo Bank*,
    No. 13 Civ. 519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ........................... 7, 8

*Kenford Co. v. County of Erie*,
    73 N.Y.2d 312 (1989) ............................................................................................. 7, 8

*Lexington 360 Assocs. v. First Union Nat'l Bank*,
    234 A.D.2d 187 (1st Dep't 1996) ............................................................................... 8

*M/A-COM Sec. Corp. v. Galesi*,
    904 F.2d 134 (2d Cir. 1990) ................................................................................. 12-13

*MRC RE Holdings L.L.C. v. Schreiber*,
    No. 653480/2013, 2015 N.Y. Misc. LEXIS 427 (N.Y. Sup. Ct. Feb. 9, 2015) ................... 13

*Mazzola v. Roomster Corp.*,
    849 F. Supp. 2d 395 (S.D.N.Y. 2012) ............................................................... 6, 9

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
    392 F.3d 520 (2d Cir. 2004) ............................................................................ 7, 8

*Nat'l Westminster Bank v. Ross*,
    130 B.R. 656 (S.D.N.Y. 1991) .......................................................................... 13

*Palmetto Partners, L.P. v. AJW Qualified Partners, L.L.C.*,
    83 A.D.3d 804 (2d Dep't 2011) .......................................................................... 7

*Schindler v. French*,
    232 F. App'x 17 (2d Cir. 2007) ........................................................................ 14

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*,
    769 F.3d 807 (2d Cir. 2014) .............................................................................. 12

*Suthers v. Amgen Inc.*,
    441 F. Supp. 2d 478 (S.D.N.Y. 2006) ............................................................... 13

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................................................ 7

**Statutes**

Fed. R. Civ. P. 8(a) ...................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 7

Fed. R. Civ. P. 15(a) .................................................................................................. 13

**Other Authorities**

5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed. 2004) ............... 8

**PRELIMINARY STATEMENT**

Broken promises have consequences. Plaintiff and Counterclaim-Defendant Oaktree Capital Management, L.P. ("Oaktree") flouted its contractual and legal obligations. The fallout from Oaktree's breaches caused Defendant and Counterclaim-Plaintiff Technology Partners, Inc. ("TPI") to incur costs that were avoidable had Oaktree upheld its side of the bargain and simply acted fairly and in good faith. Rather than right the wrong that Oaktree had imposed on TPI, Oaktree instead seeks to compel TPI to pay nearly $400,000 for services from which TPI received no benefit.

TPI and Oaktree entered into a Term Sheet, dated January 6, 2015. Complaint, dated Sept. 29, 2015, Ex. A. Copies of the Complaint and the Answer, Affirmative Defenses and Counterclaims are attached as Exhibits A and B, respectively, to the Declaration of Harry H. Rimm, executed February 5, 2016 (the "Rimm Dec.").[1] The Term Sheet gave Oaktree the right to consider making a loan to TPI (the "Loan") in connection with TPI's acquisition of a competitor, Computer Processing Unlimited, Inc. ("CPU"). The Term Sheet, which is on Oaktree letterhead, required TPI to reimburse Oaktree's due diligence costs in exchange for Oaktree's promise to provide TPI prompt notice of the amount of the costs as they were accruing. This Oaktree failed to do in breach of the Term Sheet.

TPI's intended acquisition was a fast-moving transaction. The Term Sheet recognized this fact: Oaktree's period of exclusivity was only forty-five days.[2] In disregard of this timetable,

---

[1] While Oaktree relies on the factual allegations of the pleadings, it failed to include copies thereof in violation of Local Civil Rule 7.1.

[2] Indeed, under the literal language of the Term Sheet, a closing of the Loan could have taken place six days before the Term Sheet was even executed. *See* Term Sheet at 1 (maturity of

Oaktree's behavior -- it would be inaccurate to call it "action" -- after it executed the Term Sheet was, at best, arbitrary or irrational. Counterclaim ¶ 54 (Rimm Dec., Ex. B). Oaktree failed to consider information promptly that had been provided to it in the early stages of due diligence. While Oaktree has asserted that it was this very information that caused it to decline to provide the Loan, Oaktree has never explained why it delayed notifying TPI. It was arbitrary or irrational for Oaktree to sit on the information and then back out of the deal at the last minute. Oaktree's failure to abide by its contractual and legal duties directly caused (i) TPI to incur considerable and unnecessary costs to obtain alternative financing to complete the planned acquisition and (ii) the value that TPI received from the deal itself to diminish. TPI has properly pled claims to recover those costs and loss of value.

## STATEMENT OF CASE

TPI's counterclaim for breach of contract is based on "unnecessary and unreasonable due diligence expenses that Oaktree incurred and for which it has demanded reimbursement." Counterclaims ¶ 1 (Rimm Dec., Ex. B). TPI has alleged that Oaktree's expenses were not "reasonable," *id*. ¶¶ 10, 29, 30, 46-47, and that legal due diligence should not have commenced on February 17, 2015 because (i) on February 13, 2015, Oaktree had received a document, the Intercompany Memo, which set forth the reason for Oaktree's eventual decision not to proceed with the Loan and (ii) the parties had agreed that legal due diligence would proceed only if Oaktree was satisfied with results from financial diligence. *See* Counterclaims ¶¶ 11, 16-21, 25, 39 (Rimm Dec., Ex. B).

---

Loan was December 31, 2018 [*sic*] "or such date that is 4 years after the closing date"). (Rimm Dec., Ex. A).

TPI's breach of contract counterclaim is further based on "Oaktree's failure to provide notice of the Costs and Expenses (as defined in the Term Sheet) that it incurred exceeding the agreed-upon amounts of Costs and Expenses that required notice to TPI under the Term Sheet." Counterclaims ¶ 1 (Rimm Dec., Ex. B). The Term Sheet required Oaktree to provide written notice to TPI (i) initially when the "Notification Amount" was $100,000.00 and (ii) each time thereafter when an additional $75,000.00 was incurred. *Id*. ¶ 13. On four occasions, Oaktree failed to provide TPI with the requisite written notice. *Id*. ¶¶ 31-34, 48.

TPI's counterclaim for breach of the covenant of good faith and fair dealing is based on "Oaktree's arbitrary and irrational decision (made just three business days prior to the intended closing date of the acquisition) not to fund the acquisition . . . ." Counterclaims ¶ 1 (Rimm Dec., Ex. B). The acknowledged reason for Oaktree's March 26, 2015 decision not to proceed with the Loan was the content of the February 13, 2015 financial due diligence report from Swenson Advisors. *Id*. ¶¶ 16-24. Notwithstanding that Oaktree had received key information in mid-February, Oaktree acted arbitrarily or irrationally by commencing legal due diligence and waiting almost six additional weeks to advise TPI of its decision not to proceed, a decision that Oaktree shared with TPI only three business days prior to the intended closing of TPI's acquisition, thereby damaging TPI. *Id*. ¶¶ 35-36, 39-42, 52-55.

In its memorandum in support, Oaktree mischaracterizes the counterclaims. Most importantly, TPI does not allege, as Oaktree implies, that Oaktree was obligated to provide the Loan to finance the planned acquisition. *See* Oaktree's Memorandum of Law, dated Jan. 11, 2016 (the "Oaktree Memo") at 13. The parties' agreement states clearly that Oaktree had no such obligation. Rather, TPI alleges that Oaktree was obligated to provide prompt notice of specific milestones of accrued due diligence costs. *See* Counterclaims ¶¶ 13, 31-34 (Rimm Dec.,

3

Ex. B).  The obvious benefit to TPI of the contractual provision for prompt notification of the cost milestones was to provide TPI with information with which to consider whether to continue to engage with Oaktree or to find another lender (after the exclusivity period).

The exclusivity provision stated that TPI would not engage in discussions with any other lender "through and including February 20, 2015."  Had TPI known that Oaktree's advisors already had run up a massive bill by February 20, 2015, TPI could have sought alternative financing that would have been in place in time to close the transaction on or before March 31, 2015.  TPI relied on Oaktree's promise to notify TPI of the cost milestones, the first being $100,000.  *See* Term Sheet at 3 (Rimm Dec., Ex. A).  Because Oaktree remained silent, in violation of its contractual duties, *see* Counterclaims ¶ 31 (Rimm Dec., Ex. B), TPI was left to believe that the costs had not yet exceeded $100,000.  Nor did Oaktree inform TPI when any of the other milestones was hit.  *Id*. ¶¶ 31-34.  After it walked away from the transaction, Oaktree presented TPI with due diligence bills of $393,603.13.  *Id*. ¶ 26.

The strict notification deadlines were included in the contract in connection with the exclusivity period because time was critical.  The timing of the planned acquisition was crucial to the value that TPI would receive in the deal.  Oaktree was aware that TPI was intent on closing the acquisition before the end of the quarter ending March 31, 2015.  Counterclaims ¶ 35 (Rimm Dec., Ex. B).

By the time Oaktree provided its first indication to TPI of the costs of due diligence, the costs were already immense, and the deadline for closing the deal was already imminent.  As such, Oaktree deprived TPI of any meaningful choice with regard to sticking with Oaktree or seeking another lender.  Right before the intended closing, Oaktree pulled out of the deal for reasons that had been known to Oaktree for almost six weeks.  TPI left Oaktree with the nearly

impossible task of procuring financing for the deal in a very short period of time.  Ultimately, TPI was able to obtain financing, but at a significant premium over the cost of alternative financing that TPI could have obtained had TPI received timely notice from Oaktree.

In an effort to deflect attention from its failures to fulfill its contractual obligations, Oaktree cherry-picks which provisions of the Term Sheet are enforceable and which are not. Oaktree misleadingly asserts, "TPI and Oaktree both agreed that the Term Sheet, with only limited exceptions, was merely a 'non-binding' proposal that should 'not be relied upon[] as a binding, enforceable contract.'"  Oaktree Memo at 2.  The full sentence is as follows:

> Neither the Proposal nor any course of conduct between [the Parties] constitutes or is intended to constitute, and should not be relied upon as, a binding and enforceable contract, except with respect to the proprietary and confidential nature of our Proposal, our agreement with respect to the Costs and Expenses (as defined below) and exclusivity, and as otherwise expressly stated herein.

Term Sheet at 2 (Rimm Dec., Ex. A).

The Term Sheet provided the following notifications and deadlines related to the Costs and Expenses to be incurred by Oaktree:

> Within ten (10) days of the Costs and Expenses in the aggregate exceeding a Notification Amount (as defined below) Oaktree *shall* provide [TPI] written notice of the Notification Amount exceeded.  The initial Notification Amount shall be $100,000.00 and each additional $75,000.00 thereafter shall constitute a Notification Amount.

*Id.* at 3 (emphasis added).

The use of the word "shall" makes clear that the provision is binding and enforceable. Oaktree contends (and wholly bases its complaint) on the enforceability of the provision in the Term Sheet requiring TPI to reimburse Oaktree's due diligence costs.  Notably, Oaktree's obligation to provide prompt notice of specific cost milestones is located in the paragraph directly under the "EXCLUSIVITY" heading and in the sentence immediately after TPI's obligation to pay Oaktree's due diligence costs.  Term Sheet at 2-3 (Rimm Dec., Ex. A).  The

5

terms of the exclusivity period follow immediately thereafter.  These reciprocal promises are the binding "agreement with respect to Costs and Expenses . . . and exclusivity[.]"  *Id.*  That is, TPI's agreement to deal with Oaktree exclusively for a period of time and to reimburse Oaktree for due diligence expenses was *wholly dependent* upon Oaktree's promise to provide prompt notification of the cost milestones.

Oaktree is correct that its abject failure to comply with the sole promise that it made to TPI is a defense to Oaktree's claim for reimbursement.  *See* Oaktree Memo at 9 n.4.  Oaktree's breach *also* resulted, however, in additional, foreseeable costs and losses incurred by TPI.

Oaktree's *idée fixe* is that it was not obligated to provide the Loan.  But this misplaced focus reveals Oaktree's misunderstanding of TPI's counterclaims.  Oaktree has not denied (and cannot) that it failed to provide written notice within ten days of when the due diligence expenses exceeded (1) $100,000; (2) $175,000; (3) $250,000; and (4) $325,000.  This failure constitutes Oaktree's breach of its contract with TPI.  Moreover, Oaktree's failure timely to notify TPI of its intent not provide the Loan based on information it had known for almost six weeks constitutes Oaktree's breach of the implied covenant of good faith and fair dealing.

## **ARGUMENT**

**I.      THE APPLICABLE STANDARDS**

"On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff."  *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 399 (S.D.N.Y. 2012) (Koeltl, J.) (citing *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)).  "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"  *Id.* (quoting *Velez v. Levy,* 401 F.3d 75, 80 (2d Cir. 2005) (internal quotation

6

marks & citation omitted)). "The Court should not dismiss the Complaint if the plaintiff has stated 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

In addition, the Federal Rules of Civil Procedure embrace notice pleading. *See* Fed. R. Civ. P. 8(a). *Accord, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). TPI respectfully submits that it has sufficiently alleged each of its two counterclaims and has more than met this relaxed standard under the Federal Rules of Civil Procedure.

## II. THE COUNTERCLAIM FOR BREACH OF CONTRACT PROPERLY ALLEGES DAMAGES

Under New York law, to state a claim for breach of contract, a plaintiff need only allege: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." *Palmetto Partners v. AJW Qualified Partners*, 83 A.D.3d 804, 806 (2d Dep't 2011). Here, Oaktree only contests the fourth required element: "resulting damages." Oaktree Memo at 8. Oaktree's arguments are, however, misplaced.

First, Oaktree's most egregious error is to assert that a plaintiff (or counter-claimant) "'must plead *and prove* . . . damages from the breach.'" Oaktree's Memo at 8 (emphasis added). The error, of course, is in the emphasized phrase. There is no need to *prove* anything in a complaint.

For its proposition, Oaktree relies solely on *House of Europe Funding I, Ltd. v. Wells Fargo Bank*, No. 13 Civ. 519, 2014 WL 1383703, at *10 (S.D.N.Y. Mar. 31, 2014). *See* Oaktree Memo at 8, 11. Both Oaktree and the Court in *House of Europe* conflate the pleading standard with the proof required to prevail at trial. The Court's error is plain from the cases that it cites in support, v*iz.*: *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520 (2d Cir. 2004), and

7

*Lexington 360 Assocs. v. First Union Nat'l Bank*, 234 A.D.2d 187 (1st Dep't 1996). *See House of Europe,* 2014 U.S. Dist. LEXIS 49894, at *30. Neither case was at the pleadings stage: *Nat'l Mkt. Share* was an appeal after trial, *see* 392 F.3d at 522; *Lexington 360* was an appeal after summary judgment, *see* 234 A.D.2d at 189-90.

By contrast, at the pleading stage, a plaintiff need only *allege* damages. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012) ("breach of contract claims fall under Rule 8(a), and thus require only a 'short and plain statement of the claim'"). *See generally* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1235, at 391-92 (3d ed. 2004).

Second, "[i]t is well settled that in breach of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co.*, 10 N.Y.3d 187, 192-93 (2008). Under New York law, damages are recoverable for breach of contract if they were foreseeable at the time of the contract. *See Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (1989) (Oaktree Memo at 11) ("party may recover general damages which are the natural and probable consequence of the breach").

In its memorandum, however, Oaktree completely ignores TPI's allegations of damages resulting from Oaktree's breaches. Specifically, TPI alleged:

> TPI was forced to unwind the asset purchase agreement with CPU, use a commercial lender to fund the transaction and enter into a down-payment/earn-out transaction rather than a full acquisition of CPU's assets. . . . The commercial lender put additional restrictions on TPI, which were not a part of the Term Sheet executed between TPI and Oaktree to fund the corporate acquisition. . . . Moreover, CPU took Oaktree's untimely arbitrary and irrational decision as an opportunity to renegotiate the corporate acquisition. As a result, Oaktree received zero representations and warranties from CPU in the acquisition.

Counterclaims ¶¶ 40-42 (Rimm Dec., Ex. B).

At this stage of the proceedings, these allegations are accepted as true. *Mazzola*, 849 F. Supp. 2d at 399.

It is beyond cavil that the parties contemplated that if Oaktree eventually did not lend the money -- for whatever reason -- TPI would seek financing elsewhere. If confirmation for this obvious proposition is needed, one need look no further than the contract itself: it provided that TPI could not seek financing elsewhere until Oaktree's exclusive period expired. If TPI were required to seek a loan elsewhere because, as TPI alleges, Oaktree breached its obligations, and the alternative financing were more costly, those additional costs flow naturally from Oaktree's breaches and were foreseeable at the time of the contract.

Therefore, TPI is entitled to damages equal to the difference between the cost of alternative financing that TPI could have obtained on the date of the breach and the cost of the expedited financing required as a result of Oaktree's breaches. Additionally, TPI is entitled to damages equal to the difference in value of a total acquisition of CPU on or before March 31, 2015, versus the value of the downpayment/earn-out transaction actually consummated.

Finally, and contrary to Oaktree's suggestion, *see* Oaktree Memo at 8, TPI is not seeking damages for Oaktree's failure to make the Loan. If TPI were seeking such damages it would be suing for the economic benefit of acquiring CPU, rather than simply the increased costs of borrowing the money to do so and the change in value of the transaction.

For the foregoing reasons, TPI has properly pled the element of damages flowing from Oaktree's breach of its contractual obligations. Accordingly, the motion to dismiss should be denied.

### III. THE COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS PROPERLY ALLEGED

#### A. Distinct From Breach of Contract Claim

TPI's claim for breach of the implied covenant of good faith and fair dealing is separate from its claim for breach of contract. As explained, the breach of contract claim is based on Oaktree's failure to provide notice of particular cost milestones. The breach of the covenant claim, on the other hand, is based on Oaktree's arbitrary or irrational failure to investigate the planned acquisition, which led to its untimely decision not to make the Loan.

The decision not to fund the acquisition could not be a basis for the breach of contract claim. *See Hospital Auth. v. GS Capital Patners V Fund, L.P.*, 2011 U.S. Dist. LEXIS 5184, at *2 (S.D.N.Y. Jan. 20, 2011) (denying motion to dismiss where, "even if [lender] did not breach it promise to provide or cause the provision of financing, its actions defeated the purpose of the contract (i.e. facilitating the proposed transaction")). In *Hospital Auth.*, the Court found that the plaintiffs' alleged factual basis for the breach of good faith and fair dealing claim was not the lender's announcement that it would only fund $35 million of the full $87.7 million purchase price of the propose transaction, but "rather its refusal to provide an explanation, the timing of its decision, and its knowledge of [Plaintiffs'] reliance on its commitment." *Id*. at *14. The Court concluded that, although the lender may prove that its decision was not "arbitrary and irrational," there were "questions of fact" that prevented the case from being "dismissed at this stage." *Id*. at *15.

Likewise here, TPI has pled that Oaktree did not act in good faith in the way in which it made, and the timeliness in which it conveyed, its decision not to make the Loan. Accordingly, the implied covenant claim is based on different facts from the breach of contract claim. Simply put, the two claims are not duplicative.

### B.     Oaktree's Duty to Act in Good Faith

The New York Court of Appeals has delineated the standard for a breach of the implied covenant:

> Encompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included . . . This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . . *Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion*. . . .

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (emphasis added; internal citations & quotation marks omitted).  *Accord*, *Giller v. Oracle USA, Inc.*, No. 11 Civ. 2546, 2012 WL 467323, at *7 (S.D.N.Y. Feb. 14, 2012) (Oaktree Memo at 11); *Concesionaria DHM v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (Oaktree Memo at 12).

Oaktree claims that it "was under no obligation to provide any funding *or to inform TPI of its decision by a specific date or time*."  Oaktree Memo at 10 (emphasis added).  The implied covenant of good faith and fair dealing obligated Oaktree, however, to consider, in good faith, any relevant material provided to Oaktree and its advisors in the due diligence process.  *See Dalton*, 87 N.Y.2d at 392-93 (testing service breached implied covenant of good faith and fair dealing where, even though contract gave testing service discretion whether or not to release test score, it failed to consider relevant information submitted by test-taker).

A borrower in TPI's position would be justified in understanding that a contract with a short exclusivity period and strict deadlines for notice of specific cost milestones would include a promise to be *diligent* during *due diligence*.  Therefore, Oaktree owed TPI the implied duty to consider the information provided to Oaktree promptly and, as soon as practicable, to make TPI aware when Oaktree received information that would cause it to decline to provide the funding.

11

Oaktree failed to do so.  As such, TPI has properly pled such a breach of the implied covenant of good faith and fair dealing.

The implicit requirement to deal fairly required Oaktree to evaluate -- honestly, adequately and *promptly* -- the information provided to it in order to determine whether it would provide the Loan.  Oaktree's failure to do so was arbitrary or irrational.  Apparently Oaktree believed that, regardless of its lack of attention to the matter, Oaktree could blithely avoid liability for the increase in TPI's other costs and loss of value caused by Oaktree's delay.  The law does not countenance such behavior.  "Where the contract contemplates the exercise of discretion, this pledge [of good faith and fair dealing] includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton,* 87 N.Y.2d at 389 (citation omitted).

The cases Oaktree cites to the contrary all ignore the plain teaching of *Dalton*.  In *Security Plans, Inc. v. CUNA Mutual Ins. Soc'y*, 769 F.3d 807 (2d Cir. 2014), the Second Circuit made a thorough review of the New York law regarding the covenant of good faith and fair dealing.  *See id*. at 817-19.  While the court acknowledged that the covenant does not "undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's expected benefit," *id*. at 817, it nonetheless held, relying on *Dalton*, that *the covenant is breached if the defendant "'acted arbitrarily or irrationally in exercising [the] discretion' afforded to it under the contract*." *Id*. at 818 (emphasis added). *Accord*, *Components Direct, Inc. v. European American Bank*, 175 A.D.2d 227, 229-230 (2d Dep't 1991) ("absent valid business reasons, the obligation of good faith would require a period of notice to allow the corporate plaintiff a reasonable opportunity to seek alternate credit"); *MRC RE Holdings LLC v. Schreiber*, 2015 N.Y. Misc. LEXIS 427, at *8 (N.Y. Sup. Ct. Feb. 9, 2015) (noting that if

approval of loan was withheld arbitrarily or unreasonably, defendants "would have a colorable claim for breaching the implied covenant of good faith and fair dealing").

Thus, Oaktree is just plain wrong when argues that it could not violate the implied covenant even if its conduct was "unreasonable." Oaktree Memo at 12 (citing *Suthers v. Amgen, Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006)). TPI does not allege that Oaktree's conduct was simply unreasonable; it alleges that it was arbitrary or irrational. Counterclaims ¶ 54 (Rimm Dec., Ex. B).

Furthermore, the court in *Nat'l Westminster Bank, U.S.A. v. Ross* (Oaktree Memo at 12), examined whether the *timing* of a decision not to provide funding could support a claim for breach of the implied covenant. 130 B.R. 656, 680-81 (S.D.N.Y. 1991). While the court found that the notice provided was "reasonable," *id*., it did so only before the Court of Appeal's decision in *Dalton*.

In *M/A-COM Sec. Corp. v. Galesi* (Oaktree Memo at 13), the court held that the defendant's business decisions in a subsequent *unrelated* transaction could not form the basis of a breach of the implied covenant. 904 F.2d 134, 136 (2d Cir. 1990). Obviously, here, TPI's allegations involve the direct result of Oaktree's conduct in the transaction in question, itself.

None of the contrary cases cited by Oaktree follows the teaching of *Dalton* or is controlling. Because TPI has alleged facts supporting a breach of the implied covenant, the motion should be denied.

## IV. **TPI SHOULD BE GRANTED LEAVE TO REPLEAD**

In the event that the Court may grant any portion Oaktree's dismissal motion, TPI respectfully requests leave to replead its counterclaims. Fed. R. Civ. P. 15(a) provides that "leave [to replead] shall be freely given when justice so requires." *See Foman v. Davis*, 371 U.S.

178, 182 (1962).  For this reason, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citing *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir. 1990)); *see also Schindler v. French*, 232 Fed. Appx. 17, 19 (2d Cir. 2007) (summary order) (vacating and remanding order granting motion to dismiss to allow opportunity to replead).  While "[generally, a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," here no such good reason to deny leave to replead exists. *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal citations omitted).

## CONCLUSION

For the foregoing reasons, TPI has properly pled counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, and Oaktree's motion to dismiss should be denied in its entirety.  In the alternative, TPI should be allowed to replead its counterclaims.

Dated: New York, New York
February 5, 2016

        Respectfully submitted,

        **SULLIVAN & WORCESTER LLP**

        By: /s/Harry H. Rimm
           Harry H. Rimm
           George O. Richardson, III

        1633 Broadway
        New York, New York 10019
        Telephone: (212) 660-3000
        Facsimile: (212) 660-3001

        *Attorneys for Defendant and Counterclaim-Plaintiff*
          *Technology Partners, Inc.*