UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
OAKTREE CAPITAL MANAGEMENT, L.P.,                                :
                                                                 :
                       Plaintiff,         :   15-CV-9143 (JGK) (SN)
                                                                 :
         -against-                                               :
                                                                 :
TECHNOLOGY PARTNERS, INC.,                                       :
                                                                 :
                       Defendant.         :
-----------------------------------------------------------------x

**OAKTREE CAPITAL MANAGEMENT, L.P.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
<u>TECHNOLOGY PARTNERS, INC.'S COUNTERCLAIMS</u>**

                                        TAYLOR & COHEN LLP
                                        Robert Cohen
                                        Zachary S. Taylor
                                        40 Worth Street
                                        10th Floor
                                        New York, New York 10013
                                        Telephone:   (646) 527-7377
                                        Facsimile:   (646) 439-9983

New York, New York
February 15, 2016

TPI's opposition brief does several things. It misrepresents facts. It misreads the law. It mischaracterizes Oaktree's arguments for dismissal. Most importantly, though, TPI's papers reinforce the conclusion that its counterclaims should be dismissed with prejudice.

## ARGUMENT

**I.     The First Counterclaim for Breach of Contract Should Be Dismissed.**

TPI's First Counterclaim fails for two independent reasons. First, the allegations upon which the counterclaim is based are squarely refuted by a document that is integral to TPI's pleading. Second, this document aside, TPI's theory of damages is fatally deficient.

TPI's now says that Oaktree's alleged failure to provide prompt notice when its due diligence costs met certain thresholds "constitutes Oaktree's breach of contract with TPI." (TPI's Opposition Brief, dated February 5, 2016 ("Opp. Br.") at 6). TPI contends that "[b]y the time Oaktree provided its first indication to TPI of the costs of due diligence, the costs were already immense and the deadline for closing the deal was already imminent." *Id.* at 4.[1] Thus, Oaktree supposedly "deprived TPI of any meaningful choice with regard to sticking with Oaktree or seeking another lender." (*Id*.). TPI then maintains that it suffered damages from this alleged breach because it was forced to consummate a deal with a new lender on terms that were allegedly less advantageous than the funding it supposedly could have secured had it received notice of Oaktree's due diligence expenses earlier. (*Id*. at 4-5).

---

[1] TPI repeatedly misstates the end date of the exclusivity period as being February 20, 2015. (Opp Br. at 1, 4). As TPI well knows, the exclusivity period was amended, by mutual agreement of the parties, to March 2, 2015. *See* Complaint, Ex. B (attached hereto at Declaration of Robert Cohen, executed February 15, 2016 ("Cohen Decl."), Ex. A).

TPI's theory is belied by documents that it knew of and relied upon when drafting the counterclaims. In short, it is irrefutable that Oaktree provided notice of its expenses to TPI relatively early in the due diligence process and certainly before "the costs were already immense and the deadline for closing the deal was already imminent." (*Id*. at 4).

On February 13, 2015, Nicholas Basso, Oaktree's Vice President, sent an email to several individuals, including TPI's investment banker for the deal, Jeffery Jones (the "February 13 Offer"). This communication constituted an offer to amend the Term Sheet to cap Oaktree's total due diligence expenses at $400,000:

> Regarding expenses:
> - To date, our accountants have billed approximately $113,000 for the earnings study conducted on Imagine
>   - We expect a few additional charges / expenses here but nothing incredibly material
>
> - Our lawyers have advised that the above diligence and documentation on a 2-3 week timeframe (assuming no unknown liabilities or other complications) will cost between $200,000 and $250,000
>
> ***Overall, expenses shouldn't amount to more than $400,000 and we would be willing to cap it there.*** Realistically we expect ~$350,000 of total expenses, most of which will relate to the legal documentation as noted above, but ***we would like confirmation that that amount is acceptable to the company.***

(Cohen Decl., Ex. B (emphases added)).

On February 19, 2015, TPI accepted the February 13 Offer, thus amending the Term Sheet, as alleged in TPI's counterclaims. (Countercl. ¶ 12). TPI's acceptance of the February 13 Offer came from its CEO, Sam Khashman, who wrote to Mr. Basso (and copied Mr. Jones) on

February 19, 2015, stating, "I hereby agree to the $400k spending cap." (Complaint, Ex. B (attached hereto at Cohen Decl., Ex. A)).[2]

This agreement to amend the Term Sheet makes clear that, contrary to TPI's assertions, it had notice as to when Oaktree's expenses reached the $100,000 threshold provided for in the Term Sheet.[3] (Countercl. ¶ 31). Moreover, TPI knew, again contrary to the allegations in its counterclaims, that Oaktree was commencing legal due diligence and also knew the anticipated cost of that diligence. (Countercl. ¶¶ 22, 29). Thus, TPI's claim of surprise and shock over the due diligence expenses is contradicted by its own agreement to amend the Term Sheet.

The February 13 Offer is a document the Court may consider when deciding this motion to dismiss. Certainly, it is a document TPI "knew of when bringing" its counterclaims. *Vysyaraju v. Mgmt. Health Sols., Inc.*, No. 12 Civ. 4420 JGK, 2013 WL 4437326, at *1 (S.D.N.Y. Aug. 18, 2013) (Koeltl, J.). To assert otherwise would fly in the face of TPI's acceptance of the February 13 Offer as well as the allegation in Paragraph 12 of its counterclaims. Moreover, TPI's First

---

[2] The February 13 Offer and TPI's acceptance, of course, constitute the entirety of the contract to amend the Term Sheet. *See, e.g.*, *E. Brass & Copper Co. v. Gen. Elec. Supply Corp.*, 101 F. Supp. 410, 412 (S.D.N.Y. 1951) ("[W]here a proposition on one side is submitted … calling for an answer based on such proposal, the answer, though in writing, need not necessarily recite all the terms and conditions embodied in the proposal. It is to be read in connection with the proposal to which it is a reply, and the whole together constitutes the contract between the parties.").

[3] TPI's claims that Oaktree "cherry picks which provisions of the Term Sheet are enforceable and which are not" are nonsense. (Opp. Br. at 5). Oaktree's moving papers do not disclaim any responsibility for it to abide by the expense notification provisions in the Term Sheet.

3

Counterclaim relies "heavily upon [the email's] terms and effects, thereby rendering the document integral to the complaint." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394 (AJN), 2016 WL 439020, at *1 (S.D.N.Y. Feb. 3, 2016 (Koeltl, J.) (quotation marks omitted). TPI is suing on a contract. The February 13 Offer, which TPI accepted, amended that contract. This amendment pertains directly to the notice requirement upon which TPI attempts to base its First Counterclaim.

TPI's First Counterclaim thus fails. The February 13 Offer squarely contradicts the allegations on which TPI bases its claim for breach of contract. *See Royal Park Invs.*, 2016 WL 439020, at *1 (If the document "contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (quotation marks omitted).

TPI's First Counterclaim also fails for the independent reason that its purported damages cannot satisfy basic pleading requirements. Thus, even if TPI could somehow allege a breach of the Term Sheet's notice provisions, the First Counterclaim would still fail because TPI's claimed damages are not the "natural and probable consequence"[4] of any alleged breaches nor were they "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (quotation marks omitted). The February 13 Offer informed TPI of Oaktree's then-current expenditures of $113,000. It also

---

[4] TPI mischaracterizes Oaktree's arguments for dismissal. Oaktree does not maintain that TPI must "prove" contractual damages at this stage. (Opp. Br. at 7). The case that so offends TPI, *House of Europe Funding I, Ltd. v. Wells Fargo Bank*, No. 13 Civ. 519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014), was merely cited for the unremarkable proposition that TPI must plead damages "flowing from the breach."

projected future expenses for legal due diligence to be between $200,000 – $250,000 and proposed a $400,000 cap on total expenses. In light of this, TPI cannot plausibly allege that it would have searched for alternative funding if only it had learned that Oaktree's expenses had gone beyond $113,00. This is especially true given that, as TPI itself alleges, Oaktree's expenses were ultimately *less than* the mutually agreed cap of $400,000. (Countercl. ¶ 26). Moreover, even if TPI had decided to look for alternative funding it is mere speculation that TPI would have secured a loan on terms that were more beneficial than those it ultimately received. In short, TPI's theory is premised on conjecture and defies logic. Its claimed damages are, thus, fatally defective.

Even putting aside the February 13 Offer, TPI's claim for damages is no less flawed. Again, by TPI's own admission, on February 19, 2015, it agreed to a $400,000 cap on Oaktree's expenses. (Countercl. ¶ 12). TPI does not allege, because it cannot allege consistent with the truth, that at the time of the amendment it was unaware of Oaktree's expenditures. Nor can TPI legitimately claim surprise at Oaktree's total claimed expenditures, which TPI admits amounted to $393,603.13 – just below the agreed-upon cap. (*Id.* ¶ 26). Consequently, the parties could not have contemplated that TPI would incur damages resulting from its decision to exit the deal because Oaktree's expenses were less than the agreed-upon limit. Indeed, the idea that TPI would seek alternative financing (and potentially incur additional due diligence expenses with a new lender) had it received notice that Oaktree was incurring costs consistent with the agreed-upon cap is illogical. Thus, TPI's claimed damages are not the "natural and probable consequence" of the alleged breaches.[5]

---

[5] Elsewhere, TPI contends that its breach of contract claim is also premised on allegations that Oaktree's expenses "were not reasonable" and that "legal due diligence should not have

5

**II.      The Second Counterclaim for Breach of the Implied Covenant Should Be Dismissed.**

TPI's opposition brief demonstrates why its Second Counterclaim is also fatally flawed. TPI relies heavily on the case of *Hospital Authority of Rockdale County v.GS Capital Partners V Fund, L.P, et al.*, No.09 Civ. 8716, 2011 WL 182066 (S.D.N.Y. Jan. 20, 2011). But this decision is easily distinguishable and actually supports the dismissal of TPI's claim for breach of the implied covenant.

In *Hospital Authority*, the contract upon which the plaintiff brought its claim for breach of the implied covenant is fundamentally different from the Term Sheet. There is no dispute that the Term Sheet explicitly disclaims any obligation by Oaktree to provide funding. In contrast, the lender in *Hospital Authority* made a **binding, contractual commitment** to provide funding to Signature Hospital Holdings, the entity that was to purchase the hospital from the plaintiff.

| Term Sheet | *Hospital Authority* Commitment Letter |
|---|---|
| This Proposal is **non-binding**. Neither the Proposal nor any course of conduct between us [TPI] or any of our representatives constitutes or is intended to constitute, and ***should not be relied upon as a binding and enforceable contract***, except with respect to …<br>…<br>The Proposal may be ***withdrawn*** or altered at any time ***for any reason or no reason*** without notice.<br><br>(Complaint, Ex. A, at 2 (emphases added)). | The Investors hereby ***commit***, jointly and severally, subject to the terms and conditions set forth herein, that, at or prior to the closing of the transactions contemplated by the Agreement, they ***shall provide***, or ***shall cause*** the provision of, financing to Signature ….<br><br>(Cohen Decl., Ex. C at ¶ 1 (emphases added)). |

---

commenced on February 17, 2015." (Opp. Br. at 2). This is rubbish. Even assuming the truth of these allegations (a preposterous assumption, as explained above), TPI's damages would be nil. TPI would only be entitled to the difference between Oaktree's actual expenses and those that are "reasonable." But by its own admission, TPI has not paid Oaktree any money. Consequently, TPI would receive no damages whatsoever.

In *Housing Authority*, the plaintiff's claim was premised (rightfully) on an obligation to provide funding that was set forth in the contract between the parties. Here, no such obligation existed. As TPI admits, Oaktree's "sole promise that it made to TPI" was to provide notification of the "cost milestones." (Opp. Br. at 6). Consequently, as explained in Oaktree's moving papers, TPI's claim impermissibly "adds terms to the contract that do not exist." *Concesionaria DHM v. Int'l Fin. Corp.*, 3 F. Supp. 2d 533, 564 (S.D.N.Y. 2004) (Koeltl, J).

TPI's reliance on *Dalton v. Educational Testing Service*, 87 N.Y.2d 384 (1995) is also misplaced. Far from changing the legal landscape, as TPI implies, *Dalton* is a straightforward application of the established regime that governs the pleading of a claim for breach of the implied covenant, including the rule that "no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Id.* at 389 (quotation marks omitted). As explained above, TPI's Second Counterclaim violates this rule.

Indeed, several courts, citing *Dalton*, have rejected claims similar to the one TPI brings. For instance, in *State Street Bank and Trust Company v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004), the Second Circuit cited the very language from *Dalton* upon which TPI relies (Opp. Br. at 11): "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *State Street*, 374 F.3d at 169. The Second Circuit then went on to state the futility of the plaintiff's claim for breach of the implied covenant:

> Where a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent.
> …
> [I]n the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold

7

> consent for any reason or no reason, and ... no implied obligation to act in good faith exists to limit that choice.

*Id.* (quotation marks omitted; alternations in original). Similarly, in *Suthers v. Amgen*, the court cited the same language from *Dalton* and proceeded to dismiss the plaintiff's claim for breach of the implied covenant:

> Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract. Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable.

441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006). *See also Citibank, N.A. v. United Subcontractors, Inc.*, 581 F. Supp. 2d 640, 645 (S.D.N.Y. 2008) (citing *Dalton* and rejecting claim for breach of the implied covenant).

The holdings of these cases apply with even more force here. First, far from containing language that Oaktree may not unreasonably refuse to provide the funding to TPI, the Term Sheet explicitly states that Oaktree is under no obligation to provide the funding. Second, Oaktree's (entirely reasonable) decision not to provide the funding was not even covered by a contract between the parties. If a party may engage in conduct permitted under the contract, even when such actions are unreasonable, then, certainly, a party must also be permitted to engage in conduct, however reasonable or unreasonable it may be, that is not covered by the contract.

### III. The First and Second Counterclaims Should Be Dismissed With Prejudice.

TPI request for leave to replead its counterclaims should be denied. The "futility of amendment is a valid basis for denying leave to amend." *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 170 (S.D.N.Y. 2014) (Koeltl, J.) (quotation marks omitted). As explained above, TPI has not pled claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and there is no set of allegations consistent with the truth that could change that.

8

TPI's brief only reinforces this fact. Consequently, the counterclaims should be dismissed with prejudice.

## CONCLUSION

For the reasons, stated above and in its moving papers, Oaktree's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted and TPI's Counterclaims should be dismissed with prejudice.

Date:  February 15, 2016         Respectfully submitted,
       New York, New York

                                  /s Robert Cohen
                                 TAYLOR & COHEN LLP
                                 Robert Cohen
                                 Zachary S. Taylor
                                 40 Worth Street, 10th floor
                                 New York, NY 10013
                                 Tel. (646) 527-7377
                                 rcohen@taylorcohenllp.com

                                 *Attorneys for Plaintiff and Counterclaim Defendant Oaktree Capital Management, L.P.*